UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

FILED
JOHN P. HEI[...]
CLERK

2014 JUL 30 PM 3: 10

U.S. DISTRICT COURT
SOUTHERN DIS[T.] OHIO
EAST. DIV. COLUMBUS

INFO-HOLD, INC., )
)
Plaintiff, )
)
v. ) CASE NO.: _____
)
MOOD MEDIA CORPORATION, ) 2:14 CV 1043
)
MOOD MEDIA NORTH AMERICA LTD., and ) JUDGE MARBLEY
)
DMX, INC., ) MAGISTRATE JUDGE KING
)
)
Defendants. )
)

**CIVIL COMPLAINT
WITH JURY DEMAND**

Plaintiff, INFO-HOLD, INC ("Info-Hold"), for its Complaint against Defendants, avers as follows:

**PARTIES TO THIS CIVIL ACTION**

1. Plaintiff, Info-Hold, Inc. ("Info-Hold"), is a Delaware Corporation with its principal place of business located at 4120 Airport Road, Cincinnati Ohio 45226.

2. On information and belief, defendant Mood Media Corporation ("Mood Media"), formerly known as Fluid Music Canada, Inc. ("Fluid"), is a Canadian corporation with an office located at 99 Sante Drive, Concord, ON, L4K 3C4, Canada and a principal United States business and contact location at 1703 West Fifth Street, Suite 600, Austin, Texas 78703.

3. On information and belief, Defendant Mood Media North America Ltd. ("Mood NA" or "MNA"), formerly known as Trusonic Inc. ("Trusonic"), is a California corporation and wholly

owned subsidiary of Mood Media Corporation with its principal place of business located at 3860 Calle Fortunada, Suite 100, San Diego, California 92123.

4. On information and belief, defendant DMX, Inc. ("DMX") is a Texas corporation with its principal place of business located at 1703 West Fifth St., Suite 600, Austin, Texas 78703, and is a wholly owned subsidiary of Mood Media Corporation and now doing business under the Mood brand.

## NATURE OF THE ACTION

5. This is an action for patent infringement in violation of 35 U.S.C. § 271(a), (b), and (c).

## JURISDICTION AND VENUE

6. This is a cause of action for patent infringement that arises under the patent laws of the United States, Title 35 of the United States Code. Subject matter jurisdiction is proper under 28 U.S.C. § 1331, 1332 and 1338(a).

7. The Court has personal jurisdiction over Defendants at least by virtue of Defendants' internet business activities in this judicial district and elsewhere in the state of Ohio, by virtue of Defendants' national advertisement in this judicial district and elsewhere in the state of Ohio, and by virtue of Defendants' acts of infringement in Ohio and in this district, including the making, using, selling, and/or offering to sell the Accused Systems (as defined below).

8. Defendants market and supply voice and music messaging systems and services, including On-Hold Messaging, and On-Site Messaging. See, e.g., http://www.moodmedia.com/solutions.asp#/voice, last visited on July 29, 2014 (a screenshot of which is attached hereto as Exhibit A).

9. Defendants make, use, sell and/or offer to sell a variety of voice and music messaging systems and services, including On-Hold Messaging, and On-Site Messaging, within this district.

10. Defendants' Voice and Music Messaging Systems and Services are available for purchase in this district.

11. On information and belief, Customers within this district have purchased Defendants' Voice and Music Messaging Systems and Services.

12. Specifically, this Court has personal jurisdiction over Mood Media and Mood NA because, in addition to conducting substantial and continuous business within this judicial district, both Defendants were previous licensees under a Settlement and Patent License Agreement agreed to and submitted in settlement of Case 1:06-cv-543 (S.D. OH) and captioned, Info-Hold, Inc. v. Trusonic, Inc., thereby voluntarily submitting to the jurisdiction of this Court.

13. Specifically, on information and belief, this Court has personal jurisdiction over DMX because DMX conducts substantial and continuous business in this judicial district via the internet and otherwise and has established minimum contacts within this judicial district such that the exercise of jurisdiction would not offend traditional notions of fair play and justice. Further, DMX is a wholly owned subsidiary of Defendant Mood Media Corporation and is a sister subsidiary of Defendant Mood Media North America Ltd., and, on information and belief, markets identical and/or similar infringing products as those two Defendants, so that any related cause against DMX should properly be heard in this Court.

14. Venue in this district is proper under 28 U.S.C. § 1391(b), 1391(c) and 1400(b) at least by virtue of Defendants' conduct within this judicial district and elsewhere throughout the state of Ohio, by virtue of Defendants' national advertisement within this judicial district and elsewhere throughout the state of Ohio, and by virtue of Defendants' acts of infringement in Ohio and this district.

## STATEMENT OF CLAIM

15. The allegations of the preceding paragraphs are incorporated as if fully set forth herein.

16. Info-Hold is the owner of all right, title, and interest in and to United States Letters Patent No. 5,991,374 entitled "Programmable Messaging System for Controlling Playback of Messages on Remote Music On-Hold-Compatible Telephone Systems and Other Message Output Devices" (hereinafter "the '374 patent"), duly and legally issued to Joey C. Hazenfield as U.S. Patent No. 5,991,374, a true and accurate copy of which is attached as Exhibit B.

17. On June 21, 2011, following an *ex parte* reexamination of the '374 patent, the U.S. Patent and Trademark Office ("PTO") issued an Ex Parte Reexamination Certificate No. 5,991,374 C1, a true and accurate copy of which is attached as Exhibit B (together with U.S. Patent No. 5,991,374, collectively the "'374 patent").

18. On August 8, 2006, Joey C. Hazenfield executed an Agreement that, *inter alia*, assigned his rights under the '374 patent, including the right to sue and recover for past and future damages, to plaintiff Info-Hold. Attached is a true and accurate copy of the Assignment. See Hazenfield Assignment attached as Exhibit C.

19. Thus, at all times relevant to this action, plaintiff, Info-Hold, was the owner of the patent-in-suit.

20. On information and belief, Defendants Mood Media Corporation and Mood Media North America Ltd., and their predecessors-in-interest, were previous licensees under the patent-in-suit (as Trusonic, Inc. and Fluid Music Canada, Inc., respectively)[1]. Settlement and Patent License Agreement between Info-Hold and Trusonic and Fluid Music Canada, Inc. dated September 18, 2009 ("Trusonic Agreement").

---

[1] Upon information and believe, Fluid Music Canada purchased Mood Media around May, 2010 and adopted the Mood Media name.

4

21. Plaintiff has complied with the statutory requirement of placing a notice of the Letters Patent on all Voice and Messaging Systems it makes and sells (at least as of March 29, 2011)[2] and has given the Defendants written notice of the infringement since, at least, the commencement of this action.

22. Defendants have written notice of infringement regarding the MBOX4 line of products, since at least September 26, 2012, based on the filing of the Motion for Leave to File Info-Hold's Amended and Supplemental Complaint (motion to add the MBOX4 to the lawsuit between Info-Hold and Muzak). *See* Dkt. 62, Info-Hold, Inc. v. Muzak Holdings LLC and Muzak LLC, Case No. 1:11-cv-283.

## COUNT I – DIRECT PATENT INFRINGEMENT

23. The allegations of the preceding paragraphs are incorporated as if fully set forth herein.

24. Defendants' business is predicated in part on its making, using, selling, and/or offering to sell a variety of Voice and Music Messaging Systems and Services covered by the '374 patent including, but not limited to, the following products:

1. the MV line of messaging systems, including the MV, MV2 and MV3 messaging systems;[3]

2. The MBOX line of messaging systems, including the MEDIA PLAYER, MOOD MEDIA PLAYER, MBOX2, MBOX3, and MBOX4;

3. ENCOMPASS LE2 and ENCOMPASS SR messaging systems;

---

[2] Upon information and belief, on this date, Mood Media terminated the Trusonic Agreement based on the decision of the Patent Office in the Reexamination of the '374 patent.
[3] This Complaint does not cover claims made against Muzak for the MV and LE2 systems at-issue in the on-going case between Info-Hold and Muzak. Muzak Holdings LLC and Muzak LLC, Case No. 1:11-cv-283 (S.D. OH) (Western Division) and filed on May 3, 2011.

5

4. The PROFUSION line of messaging systems, including the PROFUSION X, PROFUSION XS.

All of the Defendants' Voice and Music Messaging Systems and Services having a remote programmability feature, including those listed above, are hereinafter referred to as the "Accused Systems."

25. On information and belief, Defendants have been, and are now, infringing claims of the '374 patent: (1) by making, using, offering to sell and/or selling within this judicial district, and elsewhere in the United States, the Accused Systems which embody the invention claimed in the '374 patent.

26. Defendants' activities with respect to the '374 patent are without authority or license from Info-Hold.

27. On information and belief, Defendants have been, and continue to, make, use, offer to sell, and/or sell products that infringe the '374 patent without a license from Info-Hold.

28. As a result of the infringement by Defendants, Info-Hold has been damaged and will continue to be damaged in an amount to be determined at trial.

29. Info-Hold has also suffered and will continue to suffer irreparable injury unless this Court enjoins Defendants' activities.

### Count I A: Against Mood Media North America Ltd. for Direct Infringement

30. Plaintiff realleges and incorporates by reference paragraphs 1-29 as if fully rewritten herein.

31. MNA makes, offers and sells, by direct sale, lease, and subscription, remotely programmable on-hold and overhead ("on-site") voice and music and messaging systems to,

6

*inter alia*, commercial retail stores, hospitality companies, food service companies, and convenience stores.

32.     On information and belief, MNA's products include the systems commonly known and marketed as the Media Player, Mood Media Player, MBox 2, MBox 3, and MBox 4, MV, MV2, MV3 and Encompass LE2 and SR, all of which are Accused Systems in this action and each of which embodies and infringes the '374 patent.

33.     On information and belief, MNA provides these systems to its clients in order that those clients' customers will hear promotional and other messages and music either during the time they are inside the clients' premises or during the time they are on-hold on the telephone waiting for assistance.

34.     On information and belief, MNA has infringed and continues to infringe the '374 patent by making, using, selling and/or offering to sell remotely programmable On-hold and On-site Voice and Music Messaging Systems that embody the patented invention and will continue to do so unless enjoined by this Court.

35.     MNA received actual knowledge of the '374 patent since, on or around, August 17, 2006 when it was sued, as Trusonic, Inc., for patent infringement under this patent and in this judicial district in action 1:06-cv-543 (S.D. OH) (Western Division). See also, the Trusonic Agreement (Trusonic became Mood Media North America Ltd).[4]

### Count I B: Against DMX, Inc. for Direct Infringement.

36.     Plaintiff hereby incorporates and restates the allegations contained in paragraphs 1-29 as if fully rewritten herein.

---

[4] Or at least around October 17, 2007 when Fluid Music Canada purchased Trusonic (who was engaged in the lawsuit relating to the '374 patent).

7

37. Plaintiff has owned the '374 patent throughout the period of DMX's infringing acts and still owns the patent.

38. On information and belief, DMX's products include those commonly known and marketed as the ProFusion X, ProFusion XS, MBOX, MBOX 2, MBOX 3, and MBOX 4. DMX is now marketing products under the "Mood" brand.

39. On information and belief, DMX has infringed and continues to infringe the '374 patent by making, using, selling and/or offering to sell these remotely programmable On-hold and On-site Voice and Music Messaging Systems that embody the patented invention and will continue to do so unless enjoined by this Court.

40. In addition, certain non-infringing articles, including but not limited to, in-store speaker systems, are often provided by DMX or its resellers or other affiliates. Those non-infringing articles are so integral to the functionality of the infringing products as to effectively become components of a single, functioning, infringing system, for which DMX is liable under the convoyed sales, or entire market value, rule.

41. DMX has knowledge of the '374 patent since, at least, April 2012 when it was acquired by Mood Media Corporation, which was a licensee under the '374 patent prior to that acquisition.

## COUNT II – INDIRECT PATENT INFRINGEMENT

42. Plaintiff incorporates the allegations set forth in the paragraphs above as though fully set forth herein.

43. On information and belief, Defendants have, under 35 U.S.C. § 271(b), indirectly infringed, and continue to indirectly infringe the '374 patent by, *inter alia*, inducing others to make, use, sell and/or offering to sell the above mentioned Accused Systems covered by the '374

patent, and distributing, marketing, and advertising those products covered by the '374 patent in this judicial district and elsewhere in the United States.

44. On information and belief, Defendants have actual knowledge of the '374 patent. As set forth in detail below, Defendants have actual knowledge or were willfully blind to the fact that the Accused Systems infringe the '374 patent.

45. Despite having such knowledge of the '374 patent, Defendants have continued to make its Accused Systems available to its customers.

46. On information and belief, Defendants' customers directly infringe the '374 patent by, for example, using the Accused Systems.

47. On information and belief, Defendants are aware that it provides its customers with Accused Systems that are used in a manner that knowingly infringes the '374 patent, and encourages and instructs customers to use those products in a manner which infringes at least one claim of the '374 patent. For example, upon information and belief, Defendants knowingly provide its customers with, *inter alia*: instruction manuals accompanying the purchased Accused Systems that instruct a customer on the proper procedure for practicing the invention claimed in the '374 patent.

48. On information and belief, Defendants continue to instruct its customers on using the infringing Accused Systems. These instructions evidence clear intent by the Defendants to induce that which Defendant knows would be actual infringement of the '374 Patent on the part of its customers.

49. Accordingly, Defendants are actively and knowingly aiding and abetting its customers' direct infringement of the '374 patent. As direct and proximate result of Defendants' acts of inducing infringement of the '374 patent, Plaintiff has suffered injury and monetary damages for

which Plaintiff is entitled to relief, in no event less than a reasonable royalty to compensate for Defendants' infringement.

50.    On information and belief, Defendants will continue to induce infringement of the '374 patent, causing immediate and irreparable harm unless this Court enjoins and restrains Defendants' activities, specifically the acts of making, using, selling and offering to sell the Accused Systems.

51.    On information and belief, the induced infringement by Defendants has, and will, deprive Plaintiff of royalties and other related revenue which Plaintiff would have made or would enjoy in the future; has injured Plaintiff in other respects; and will cause Plaintiff added injury and damages unless Defendants are enjoined from inducing infringement of the '374 patent on all Accused Systems Defendants will make, use, sell, or offer to sell until the expiration of the '374 patent.

52.    On information and belief, Defendants have, under 35 U.S.C. § 271(c), indirectly infringed, and continues to infringe the '374 patent by, *inter alia*, selling and offering to sell, the above mentioned Accused Systems covered by the '374 patent while knowing that the Accused Systems are material to practicing certain claims of the '374 patent and have no substantial non-infringing uses, and are known by the Defendants to be especially made or especially adapted for use in an infringement of the '374 patent.

53.    Despite having knowledge of the '374 patent, Defendants have continued to make its Accused Systems available to its customers.

54.    Defendants' customers directly infringe the '374 patent by, for example, using the Accused Systems.

55. On information and belief, Defendants make and sell the Accused Systems knowing that the Accused Systems are especially made and adapted for use in an infringement of the '374 patent.

56. On information and belief, by providing the Accused Systems that have no substantial non-infringing uses, Defendants are actively and knowingly contributing to its customers' direct infringement of the '374 patent. As direct and proximate result of Defendants' acts of contributory infringement of the '374 patent, Plaintiff has suffered injury and monetary damages for which Plaintiff is entitled to relief, in no event less than a reasonable royalty to compensate for Defendants' infringement.

57. On information and belief, Defendants will continue to contribute to the direct infringement of the '374 patent, causing immediate and irreparable harm unless this Court enjoins and restrains Defendants' activities, specifically the acts of making, using, selling and offering to sell the Accused Systems.

58. On information and belief, the contributory infringement by Defendants has, and will, deprive Plaintiff of royalties and other related revenue which Plaintiff would have made or would enjoy in the future; has injured Plaintiff in other respects; and will cause Plaintiff added injury and damages unless Defendants are enjoined from contributing to the infringement of the '374 patent on all Accused Systems Defendants will make, use, sell, or offer to sell until the expiration of the '374 patent.

## COUNT II A: Against Mood Media Corporation for Inducing Infringement

59. Plaintiff realleges and incorporates by reference paragraphs 1-58 as if fully rewritten herein.

60.     Mood Media Corporation is the parent company of defendants Mood Media North America Ltd. and DMX, Inc., which are corporations located and doing business within the United States.

61.     Through its U.S. subsidiaries and their resellers, Mood Media causes its remotely programmable On-hold and Overhead ("on-site") Voice and Music Messaging products to be sold to businesses located within the United States.

62.     On information and belief, Mood Media's U.S. subsidiaries sell and offer for sale Mood Media products commonly known as the Media Player, Mood Media Player, MBox 2, MBox 3, and MBox 4, MV, MV2, MV3 and Encompass LE2 and SR.

63.     Through Mood Media's U.S. subsidiaries and their resellers, client companies purchase, lease, or otherwise acquire and use these Mood Media products in their intended manner.

64.     On information and belief, these accused systems embody and infringe the Plaintiff's '374 patent.

65.     On information and belief, Mood Media or its subsidiaries and resellers often provide certain other non-infringing articles, including but not limited to, in-store speaker systems and music and message content to clients. Those non-infringing articles are so integral to the functionality of the infringing products as to effectively become components of a single, functioning, infringing system, which assist in the direct infringement of the '374 patent and for which Mood Media is liable under the convoyed sales, or entire market value, doctrine.

66.     Mood Media was a "Directly Licensed Entity," with the right to grant sublicenses under the patent-in-suit, according to the terms and provisions of a "Settlement and Patent License Agreement" agreed to and executed, by Mood Media (then Fluid Music Canada) in settlement of

a patent infringement action filed in this district and division, captioned: Info-Hold, Inc. v. Trusonic, Inc., 1:06-cv-543 (S.D. OH) (Western Division).

67. Mood Media, through the term of their license agreement, acknowledged that the '374 patent was valid and enforceable and paid an on-going royalty to Plaintiff.

68. By agreeing to and becoming a signatory and licensee under that Settlement and Patent License Agreement, filed in the U.S. District Court for the Southern District of Ohio, Western Division, Mood Media voluntarily submitted itself to the personal jurisdiction of this Court.

69. The Settlement and Patent License Agreement was terminated under its terms and provisions. Mood Media and Plaintiff have no current contractual relationship under the patent-in-suit or otherwise.

70. Mood Media has actual knowledge of the '374 patent and has actual knowledge or was willfully blind to the fact that the accused products infringe the '374 patent since, on or around, the date these products were first marketed and sold (since Mood Media had knowledge of the '374 patent since August 17, 2006, the filing date of the referenced lawsuit against Trusonic, Inc.)[5]

71. On information and belief, Despite that actual knowledge, Mood Media has actively, and willfully induced the direct infringement of the patent-in-suit by advertising infringing uses of its accused products, offering technical assistance on how to use the products in their intended, infringing manner, providing a substantial music library for use in the infringing products, which, on information and belief, exceeds 1,000,000 titles, acquiring and controlling companies that sell infringing products within the United States, and by otherwise encouraging and

---

[5] Or at least around October 17, 2007 when Fluid Music Canada purchased Trusonic (who was engaged in the lawsuit relating to the '374 patent). Mood Media was known as Fluid Music Canada at the time they acquired Trusonic on October 17, 2007.

assisting its U.S. subsidiaries and their resellers in providing infringing products, technical support, advice and other assistance directly to clients that, in turn, use them to directly infringe the '374 patent.

72. On information and belief, Mood Media actively assists providing these On-hold and On-site Voice and Music Messaging systems to clients, *inter alia,* in order that those clients' customers will hear promotional and other messages and music either during the time they are inside the clients' premises or during the time they are on-hold on the telephone waiting for assistance.

73. On information and belief, Mood Media's infringing products are used by, including but not limited to, The Verve Hotel, JJ's Redhots locations, Atlanta South Gastroenterology locations, and over 1,300 Brown Shoe stores to directly infringe the patent-in-suit.

74. On information and belief, in early May of 2011, Mood Media acquired Muzak Holdings LLC and Muzak LLC (collectively "Muzak"), for approximately $345,000,000.00, which companies were named defendants in an action for direct and indirect patent infringement brought in this district and division and captioned: Info-Hold, Inc., v. Muzak Holdings LLC and Muzak LLC, 1:11-cv-283 (S.D. OH) (Western Division) and filed on May 3, 2011.

75. On information and belief, Mood Media has caused, at least one of its subsidiaries, defendant MNA, to supplant certain client contracts for infringing systems and services from another of its subsidiaries, Muzak. Thus, Mood Media, in its controlling capacity as parent company, is manipulating the business relationships of Muzak, with the effect of causing detriment to Plaintiff by reducing the pool of revenue available from which to determine and recover possible damages available to Plaintiff pending its current appeal against Muzak, CAFC No. 14-1167. (Exhibit D, Affidavit of Haas.)

### Count II B: Against Mood Media North America Ltd. for Inducing Infringement

76. Plaintiff realleges and incorporates paragraphs 1-58 as if fully rewritten herein.

77. MNA provides remotely programmable on-hold and on-site music and messaging systems to its clients, including, on information and belief, systems commonly known and marketed as the Media Player, Mood Media Player, MBox 2, MBox 3, and MBox 4, MV, MV2, MV3 and Encompass LE2 and SR that embody the '374 patent, and MNA does so without permission, authorization or authority of any kind from the patent owner.

78. In addition, certain non-infringing articles, including but not limited to, in-store speaker systems, are often provided by Mood NA or its resellers or other affiliates. Those non-infringing articles are so integral to the functionality of the infringing products as to effectively become components of a single, functioning, infringing system, for which Mood NA is liable under the convoyed sales or "entire market value" rule.

79. MNA has actual knowledge of the '374 patent and has actual knowledge or was willfully blind to the fact that the accused products infringe the '374 patent since, on or around, the date these products were first marketed and sold (since MNA had knowledge of the '374 patent since August 17, 2006 when Info-Hold filed, in this district, a complaint for patent infringement in Case No. 1:06-cv-543 (S.D. OH) (Western Division)).

80. MNA, then as Trusonic, Inc., was the "Primary Licensee" with the right to grant sublicenses under the '374 patent, according to the terms and provisions of the Settlement and Patent License Agreement agreed to by the parties and executed in settlement of the referenced 2006 action.

## Count II C: Against DMX, Inc. for Inducing Direct Infringement

86. Plaintiff realleges and incorporates by reference paragraphs 1-58 as if fully rewritten herein.

87. DMX markets its systems to its clients in order that those clients' customers will hear promotional and other messages and music either during the time they are inside the clients' premises or during the time they are on-hold on the telephone waiting for assistance.

88. On information and belief, the DMX products accused in this action infringe the Plaintiff's '374 patent.

89. On information and belief, DMX provides these accused systems to its clients and those clients use the products without authorization, permission, or license from Plaintiff to directly infringe the '374 patent.

90. DMX has actual knowledge of the '374 patent and has actual knowledge or was willfully blind to the fact that the accused products infringe the '374 patent from a time no later than April 2012, after it had been acquired by Defendant Mood Media Canada, which was a licensee with direct knowledge of the patent-in-suit prior to that date.

91. On information and belief, DMX, despite that knowledge, has demonstrated a continuing specific intent to actively induce the direct infringement of the '374 patent by taking active steps to encourage its clients, which on information and belief, include but are not limited to, McDonald's restaurant locations, Gold's Gym, and Whole Food Stores, Bass Pro Shops, Westin Hotels and Resorts, and Pottery Barn locations, to infringe the patent-in-suit by advertising infringing uses, instructing how to engage in an infringing uses, and offering technical support on how to use the systems in an infringing manner, as well as otherwise actively promoting, aiding, and assisting its resellers and customers in the direct infringement of Plaintiff's patent.

17

92. On information and belief, Defendant DMX also provides Voice and Music Messaging content to its clients by way of sales and subscriptions, at least some of which content is stored within the systems for playback to be heard by the clients' customers during the time they are in the clients' premises and/or during the time they are on-hold on the clients' business telephone systems and waiting for assistance. To that end, Defendant also provides installation services, speaker systems, and other physical, material, and technical support used by its clients to directly infringe the '374 patent.

## RELIEF

**WHEREFORE**, Info-Hold demands judgment against Defendants as follows:

(a) Entering judgment for Plaintiff that the '374 patent was duly and legally issued, is valid, enforceable, and has been infringed, directly and/or indirectly, by Defendants;

(b) Finding that this is an "exceptional case" under 35 U.S.C. § 285;

(c) Issuing a preliminary injunction restraining the Defendants, its directors, officers, agents employees, successors, subsidiaries, assigns, affiliates and all persons in privity or in concert or participation with any of them from the continued infringement, direct or contributory, or active inducement of infringement by others of the '374 patent.

(d) Issuing a permanent injunction restraining the Defendants, its directors, officers, agents employees, successors, subsidiaries, assigns, affiliates and all persons in privity or in concert or participation with any of them from the continued infringement, direct or contributory, or active inducement of infringement by others of the '374 patent.

(e) For an accounting of damages to Info-Hold arising from Defendants' acts of infringement, contributory infringement, and active inducement of infringement, the damages

including lost profits, but in no event less than a reasonable royalty to be paid by Defendants as a result of Defendants' infringing activities;

(f) For an award to Info-Hold of three times the actual damages and lost profits or royalties so determined by the accounting, together with interest and costs as provided for under 35 U.S.C. §284;

(g) For the cost of this action together with Info-Hold's attorney's fees under 35 U.S.C. §285; and

(h) Such other and further relief as the Court deems just and proper.

## DEMAND FOR A JURY TRIAL

Info-Hold demands a trial by jury of all issues triable by a jury in this case as a matter of right.

July 30, 2014

Respectfully submitted,

_____
James Lee Kwak (Sup. Ct. No.: 0066485)
F. Michael Speed, Jr. (Sup. Ct. No.: 0067541)
Standley Law Group, LLP
6300 Riverside Drive
Dublin, Ohio 43017
Telephone: (614) 792-5555
Facsimile: (614) 792-5536
Email: litigation@standleyllp.com
       jkwak@standleyllp.com
       mspeed@standleyllp.com

Daniel J. Wood
Info-Hold, Inc.
4120 Airport Road
Cincinnati, Ohio 45226
Telephone: (513) 248-5600
Email: danw@info-hold.com

Attorneys for Plaintiff
Info-Hold, Inc.

20

## VERIFICATION

I, Joey C. Hazenfield, am the President and Chief Executive Officer of Plaintiff, Info-Hold, Inc. I have read the foregoing Complaint. The factual allegations of Plaintiff are true and correct to the best of my knowledge.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 29th day of July, 2014.

_____
Joey C. Hazenfield